■ GRAHAM CONSTRUCTION & MAINTENANCE CORPORATION, Appellant-Respondent, v VILLAGE OF GOUVERNEUR, Defendant and Third-Party Plaintiff-Respondent-Appellant. UNITED STATES FIDELITY AND GUARANTY COMPANY, Third-Party Defendant-Appellant, et al., Third-Party Defendant. [646 NYS2d 720] —Cardona, P. J. Cross appeals from an order of the Supreme Court (Demarest, J.), entered March 23, 1995 in St. Lawrence County, which denied motions by plaintiff and third-party defendant for summary judgment and partially granted defendant's cross motion for summary judgment and dismissed the first cause of action.

This dispute originates with a contract entered into between plaintiff and defendant dated July 19, 1988. The contract called for plaintiff to install certain sewer improvements for defendant. Plaintiff commenced work on or about August 1, 1988. Shortly thereafter, however, plaintiff allegedly encountered running water and unstable subsoil conditions which it claimed were unanticipated and could not have been discovered until the commencement of construction. Under the terms of the contract, if plaintiff encountered subsurface conditions "materially differing from those shown on the Plans" it was required to "immediately give notice" to the engineer for the project. If, upon investigation, the engineer agreed that there were such conditions, it would issue a change in the plans and any increase in the cost resulting therefrom. Accordingly, by letter dated October 5, 1988, plaintiff's counsel notified the engineers for the project, O'Brien & Gere Engineers, Inc. (hereinafter OBG), that plaintiff had ceased working on the project because of the subsurface conditions. The letter also stated that test results both in areas encountered by plaintiff as well as those that plaintiff had not yet reached revealed unanticipated subsurface conditions. OBG responded by directing plaintiff to continue working. Instead, by letter dated October 25, 1988, plaintiff's counsel informed OBG, *inter alia*, that it was claim-

ing $299,678.46 for costs incurred due to the differing site conditions.

OBG hired Mueser Rutledge Consulting Engineers to review plaintiff's studies. Mueser compared the subsurface investigations done by OBG and those done for plaintiff. Both OBG's and plaintiff's studies involved drilling holes into the ground (borings) and compiling data as a result of those tests. In a letter dated November 23, 1988, Mueser concluded that both studies "generally showed similar subsurface materials" and that plaintiff's construction difficulties were primarily caused by "insufficient groundwater lowering". Mueser's letter addressed plaintiff's contentions concerning both the conditions it had already encountered (hereinafter claim No. 1) and those that it would encounter (hereinafter claim No. 2). With respect to claim No. 2, plaintiff's October 5, 1988 letter to OBG indicated that there was an "aquifer flow" present that would require a redesign of the remaining portion of the project.[1] In reference to the presence of an aquifer, Mueser's November 23, 1988 letter stated that it could not verify its presence but that if it existed it would be a "changed condition". The letter also pointed out that the reported artesian condition was 600 to 1,600 feet east of where plaintiff had been working and recommended further investigation.

Based on Mueser's letter, OBG informed plaintiff that defendant was rejecting claim No. 1, stating that the conditions plaintiff encountered should have been anticipated because the borings studies made available to plaintiff prior to entering into the contract described the subsurface conditions encountered by plaintiff. By letter dated January 14, 1989, plaintiff's counsel informed OBG that it considered defendant in breach of the contract for failure to make payment pursuant to the contract's terms.

Thereafter, at a January 16, 1989 meeting, defendant authorized OBG to proceed with further soil borings as recommended by Mueser and agreed to delay giving plaintiff notice to proceed with the rest of the project until the new soil borings were done. Defendant also agreed to pay plaintiff's progress pay-

---

1. Plaintiff's problems with respect to claim No. 1 involved encountering an excessive amount of groundwater as a result of its activities, which it contended could not have been anticipated prior to its commencing construction. According to plaintiff, additional "dewatering" techniques were necessitated because of the extra water. Claim No. 2 involved a different type of water problem. According to the initial findings of one of plaintiff's experts, conditions indicated the existence of an underground or "artesian aquifer" located "approximately at the midpoint of the project" which, if confirmed, could require a redesign of the sewer system.

ment requisition No. 2 and delay payment of requisition No. 3 for materials stored on site, pending review by OBG.

After conducting its own borings tests, Mueser informed OBG, by letter dated March 10, 1989, that there was no evidence to support claim No. 1 but that "dewatering" and depressurizing would be required in part of the area where plaintiff would be working and "should be viewed as extra to the contract". OBG ordered plaintiff back to work. Plaintiff refused and, on May 31, 1989, filed a notice of claim seeking damages in the amount of $299,678.46 and subsequently commenced this action seeking the same amount. In its first cause of action for breach of contract, plaintiff alleged that the site conditions were "cardinal" changes and outside the scope of the parties' agreement. The second cause of action also claimed that defendant breached the contract by not paying plaintiff. Defendant answered and counterclaimed for, *inter alia*, breach of contract and negligent performance of the contract.[2]

Plaintiff moved for summary judgment, requesting damages for the first time in the amount of $509,687.46. Defendant cross-moved for summary judgment against plaintiff. Supreme Court denied plaintiff's motion in its entirety and partially granted defendant's cross motion with respect to plaintiff's first cause of action. The parties have cross-appealed.[3]

In properly denying plaintiff's motion, Supreme Court initially determined that plaintiff's first cause of action was based only on claim No. 1 for work already completed because the complaint and documents submitted failed to assert a claim as to claim No. 2 regarding work to be done in the future. The evidence does not support the contention that the October 5, 1988 and October 25, 1988 letters provided notice to defendant that plaintiff was claiming damages based on future work, as well as work already done. Although the October 5, 1988 letter stated that subsoil conditions "will be encountered * * * throughout the remaining project course", no specific claim was made and the October 25, 1988 letter stated that defendant was to treat the letter "as a claim for $299,678.46 for costs *incurred* for differing site conditions" (emphasis supplied).

---

**2.** Defendant also commenced third-party actions against OBG and United States Fidelity and Guaranty Company. The latter party had previously executed a payment and enforcement bond with plaintiff as principal.

**3.** United States Fidelity and Guaranty Company cross-moved for the same relief as plaintiff. Its motion was denied and it too has appealed. Insofar as its position is essentially the same as plaintiff's, references to plaintiff will include United States Fidelity and Guaranty Company unless otherwise indicated.

Plaintiff's complaint stated only that plaintiff was entitled to all costs "*expended* on the PROJECT of $299,678.46" (emphasis supplied). Likewise, its notice of claim sought the same amount for costs "incurred". It was not until plaintiff's motion for summary judgment that it claimed damages in excess of that amount. No amendment to the complaint was ever sought.

We also note that, prior to plaintiff's commencing this action, defendant never actually rejected plaintiff's assertions as to claim No. 2. In fact, Mueser's March 10, 1989 letter specifically concluded that the remaining work in part of the unexcavated area was to be viewed as extra to the contract. The only claim rejected by defendant was claim No. 1. Given these circumstances and the record before us, we cannot say that Supreme Court erred in determining that plaintiff's claim was limited to recovering expenditures only for the work it had already performed.

The next question is whether Supreme Court properly determined that, because the conditions encountered by plaintiff before it stopped working did not materially differ from those indicated in the contract, plaintiff failed to establish its first cause of action. In order for plaintiff to prevail on its differing site claim, it was required to establish, insofar as pertinent to this case, reasonable reliance on the indication of subsurface conditions in the contract and that the conditions actually encountered were materially different and reasonably unforeseeable (*see, Fruin-Colnon Corp. v Niagara Frontier Transp. Auth.*, 180 AD2d 222, 226; *see also, Reliance Ins. Co. v County of Monroe*, 198 AD2d 871). We agree with Supreme Court that plaintiff did not meet its burden. Three of OBG's borings tests were taken in the area where plaintiff had actually worked. All three indicated the presence of fine to course sand and a groundwater depth of between 7 and 13 feet. The borings tests conducted by plaintiff's expert corroborated this data. More importantly, none of plaintiff's borings tests were made in the area of the completed construction work, but were instead made further east in areas where plaintiff had not yet commenced working.

In addition, although Mueser's November 23, 1988 letter recommended doing borings tests in the area where plaintiff had been working, OBG directed Mueser not to conduct such borings because defendant had already decided to deny claim No. 1. Mueser's tests were therefore performed only in the areas concerning claim No. 2. One of plaintiff's experts noted that it was "unfortunate that [OBG] decided to omit investigating [the claim No. 1] section" and that he anticipated that it

would be necessary for plaintiff "to fund an investigation of this area in order to fully document the claim". Plaintiff never did this and instead chose to rely on the tests conducted in other areas. Although plaintiff now contends that further discovery is warranted, it was plaintiff that initially moved for summary judgment. Given this evidence, we agree with Supreme Court's conclusion that the subsurface conditions encountered by plaintiff did not differ materially from those indicated in the contract and that the encountered subsurface conditions were foreseeable.

Furthermore, in reference to claim No. 1, we do not accept the assertion that issues of fact exist as to whether artesian conditions existed at the location where plaintiff stopped working. It is true that, based on the borings tests conducted by it, Mueser concluded that artesian water was present east of where plaintiff had been working and that "additional costs beyond which might have been expected from the contract documents would be associated with dewatering in this area". There was, however, no evidence presented by plaintiff to show the existence of such conditions at the site where plaintiff had actually been working. Mueser's March 10, 1989 letter specifically determined that dewatering in the area east of where plaintiff had been working would "require additional capacity beyond that required *in other locations at the site*" (emphasis supplied). Supreme Court, therefore, properly granted defendant's cross motion for summary judgment as to plaintiff's first cause of action.

With respect to plaintiff's second cause of action, Supreme Court found that plaintiff failed to establish its entitlement to payment under the terms of the contract. It is not disputed that defendant's payment of requisition No. 2 was untimely. Nevertheless, defendant did ultimately make that payment. Although plaintiff contends that the late payment constituted a material breach of the contract, we find that Supreme Court properly rejected this argument. As the court noted, the delay was brief (three weeks). In addition, plaintiff has failed to establish that it was prejudiced or damaged by the delay. As to requisition No. 3, plaintiff failed to establish that it satisfied the conditions required by the contract to be fulfilled before progress payments could be made. Supreme Court, therefore, properly found that plaintiff was not entitled to payment of requisition No. 3.

We do note, however, that while Supreme Court determined that plaintiff failed to establish its second cause of action, the court nevertheless denied defendant's cross motion for sum-

mary judgment on this cause of action. Given the court's conclusions and our agreement therewith, the court should have granted defendant's cross motion on the second cause of action as well as the first cause of action.

Mercure, White, Casey and Peters, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendant's cross motion with respect to plaintiff's second cause of action; said motion granted, summary judgment awarded to defendant and said cause of action dismissed; and, as so modified, affirmed.